Arthur R. Cox, Jr.,                          :
                      Appellant         :
                                   :
          v.         :
                                   :         No. 1329 C.D. 2018
Johnstown Housing Authority          :         Argued: May 7, 2019


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                          FILED:  June 5, 2019


Arthur R. Cox, Jr. (Cox) appeals from the Cambria County Common Pleas Court's (trial court) August 8, 2018 order affirming the Johnstown Housing Authority's (Authority) decision terminating his housing assistance and dismissing his appeal.  Essentially, the issue for this Court's review is whether substantial record evidence supported the trial court's decision.[1]

In 2013, Cox applied to participate in the federally funded, tenant-based[2] Housing Choice Voucher Program pursuant to Section 8 of the United States (U.S.)

---

[1] Cox presents five issues in his Statement of the Questions Involved: (1) whether there were facts to support the Authority's termination of Cox's benefits for impacting the other residents' health, safety or right to peaceful enjoyment of the premises; (2) whether Cox's pattern of alcohol abuse threatened other residents' health, safety or right to peaceful enjoyment of the premises; (3) whether the location of a public drunkenness incident was relevant; (4) whether evidence of Cox's prior acts were relevant *after* he was granted a voucher under Section 8 of the United States Housing Act of 1937, *as amended*, 42 U.S.C. § 1437f (Section 8 Program); and (5) whether the trial court's finding that Cox's pattern of alcohol abuse *may* threaten the other residents' health, safety or right to peaceful enjoyment of the premises was overbroad.  *See* Cox Br. at 5-6.  Because these issues are subsumed in whether there was substantial record evidence to support the trial court's decision, they will be addressed therein.

[2] "Unlike public housing assistance, which attaches to the rented unit, Section 8 [Program] tenant-based assistance attaches to the tenant.  This means that a participant in a Section 8 [Program] tenant-based program may move to another dwelling with continued assistance when his

Housing Act of 1937, *as amended*, 42 U.S.C. § 1437f (Housing Act) (Section 8 Program),[3] which is a U.S. Department of Housing and Urban Development (HUD) program the Authority operates in accordance with the Code of Federal Regulations (HUD Regulations).[4] Because Cox is a veteran, he applied for the Section 8 Program through the Veteran's Administration Medical Center (VAMC), and the Veteran's Affairs Supportive Housing (VASH) Program screened and approved him. *See* Original Record (O.R.), Notes of Testimony, July 20, 2018 (N.T.) Authority Ex. 2.

Pursuant to the Housing Act, HUD Regulations restrain tenant participants' conduct. On October 1, 2013, Cox entered into a Housing Assistance Payment (HAP) Contract (HAP Contract) with a private landlord to lease 200 Southmont Boulevard, Apartment 4, Johnstown, Pennsylvania. *See* N.T. Authority Ex. 1. Under the Real Estate Lease Agreement portion of the HAP Contract, Cox agreed

> **not to** permit or **act or practice illegal or legal acts injurious to the building, or persons, or in the building, on the property, or which may be disturbing to other residents or neighbors.** Any acts can and will result in immediate eviction and loss of rent and[/]or security deposit.

N.T. Authority Ex. 1 at 17 (emphasis added).

In the Tenancy Addendum to the HAP Contract, Cox further agreed that "[t]he [Authority] may terminate program assistance for the family for any grounds

---

assisted lease ends. 24 C.F.R. § 982.314." *Powell v. Hous. Auth. of City of Pittsburgh*, 812 A.2d 1201, 1203 (Pa. 2002). Section 8 Program tenant-based participants select a suitable rental and, after the Authority approves the tenancy and enters into an agreement with the owner to subsidize the rent, the owner and the Section 8 Program participant enter into a lease. *See id.*

[3] The Section 8 Program was enacted "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing[.]" 42 U.S.C. § 1437f(a).

[4] The federal government funds the Section 8 Program, but local public housing authorities, which are bound by HUD Regulations, *see* 24 C.F.R. §§ 982.1-982.643, administer it. *See* 42 U.S.C. § 1437f(o).

authorized in accordance with HUD requirements. If the [Authority] terminates program assistance for the family the lease terminates automatically." N.T. Authority Ex. 1 at 22. Section 4 of Cox's Section 8 Program voucher (Voucher), entitled "Obligations of the Family," further specified:

> When the family's unit is approved and the HAP [C]ontract is executed, the family must follow the rules listed below in order to continue participating in the [Section 8 P]rogram.
>
> . . . .
>
> D. The family (including each family member) **must not**:
>
> . . . .
>
> 4. **Engage in . . . criminal activity that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises**.
>
> . . . .
>
> 9. **Engage in abuse of alcohol in a way that threatens the health, safety or right to peaceful enjoyment of the other residents and persons residing in the immediate vicinity of the premises**.

N.T. Authority Ex. 2 at 2-3 (emphasis added).

On September 2, 2017, the Johnstown Police Department received a report that Cox was asking sexually explicit questions and propositioning a 17-year-old girl at the Cambria County Transit Authority bus station (CamTran Station), located at 539 Main Street in Johnstown. While speaking with Cox, Johnstown Police Officers determined that Cox was intoxicated; he became disorderly with the officers, swore in front of children and resisted arrest. *See* N.T. Authority Ex. 4. On December 8, 2017, Cox was charged with disorderly conduct (unreasonable noise),

3

public drunkenness and corruption of minors. *See* N.T. Authority Ex. 5. Cox was ultimately found guilty of the public drunkenness charge.[5]

On December 19, 2017, the Authority notified Cox that, due to his September 2, 2017 behavior, he was being dismissed from the Section 8 Program effective January 31, 2018.[6] *See* N.T. at 37. Cox requested an informal hearing, which was held on January 10, 2018. *See* N.T. at 38. On January 12, 2018, the Authority sent Cox a Notification of Informal Hearing Decision terminating his participation in the Section 8 Program. *See* O.R. Item 1, Ex. A. The Authority concluded that Cox "violated the rules and regulations of the Section 8 [P]rogram by being involved in criminal activity which threatens the health, safety and peaceful enjoyment of other residents." O.R. Item 1, Ex. A at 2.

Cox appealed to the trial court, which conducted a de novo hearing on July 20, 2018.[7] At the hearing, Cox acknowledged that, under the HAP Contract, criminal activity or alcohol use that interferes with the property or the neighbors jeopardizes his Section 8 Program eligibility. *See* O.R. at 20-23. Cox admitted that he had alcohol in his system at the time of the September 2, 2017 CamTran Station incident. *See* N.T. at 13, 15, 23-24. Cox disputed that his conduct on September 2, 2017 violated his Section 8 Program obligations.

The trial court admitted into evidence the Google maps page reflecting that the CamTran Station is located 1.9 miles from Cox's residence. *See* N.T. at 23,

---

[5] Cox was found guilty on May 2, 2018, fined $50.00 and ordered not to have contact with the victim. Cox was found not guilty of the disorderly conduct and corruption of minors charges. *See* N.T. Authority Ex. 5 at 2-5.

[6] The Authority's notice is not part of the record before this Court.

[7] A de novo review entails, as the term suggests, full consideration of the case another time. If the trial court is conducting a de novo hearing the court must act as a nisi prius court, weighing the evidence and making its own findings of fact and conclusions of law.

*McLaughlin v. Ctr. Cty. Hous. Auth.*, 616 A.2d 1073, 1074-75 (Pa. Cmwlth. 1992) (citation omitted).

4

26; *see also* N.T. Cox Ex. 1. The trial court also admitted into evidence Cox's Cambria County Court Summary that reflected Cox's June 1994 guilty pleas to charges of theft by unlawful taking and receiving stolen property, a March 1995 guilty plea for terroristic threats, a September 1997 guilty plea for receiving stolen property, and a November 2012 no contest plea for defiant trespass. *See* N.T. Authority Ex. 6.

The Authority's Section 8 Program Supervisor Yvette Penrod (Penrod) testified that VASH screened and approved Cox for the Section 8 Program before he applied to the Authority.[8] *See* N.T. at 34-35. Regarding his Section 8 Program termination, Penrod recalled that it was based on Cox's charges relative to the September 2, 2017 CamTran Station incident, which involved alcohol abuse. *See* N.T. at 28, 32.

Penrod explained that, as directed by HUD Regulations, the Authority enacted guidelines and regulations (Administrative Plan) relating to Section 8 Program terminations. *See* N.T. at 29-30, 33; *see also* Section 982.54 of HUD Regulations, 24 C.F.R. § 982.54 (relating to authority administrative plans). Penrod clarified that the Authority withdrew Cox's assistance, but Cox could remain at his residence and pay the landlord full rent.[9] *See* N.T. at 35-36.

---

[8] At the trial court hearing, in the Authority's brief, and at oral argument before this Court, the Authority's counsel represented that the Authority had no choice but to accept Cox into the Section 8 Program based on the VASH approval. *See* N.T. at 43; *see also* Authority Br. at 11-12. However, Section 982.516(a)(1) of the HUD Regulations, 24 C.F.R. § 982.516(a)(1), directs the Authority to conduct annual tenant recertifications. At oral argument before this Court, Cox's counsel represented that the Authority annually recertified Cox for the Section 8 Program. Section 982.551(b)(2) of the HUD Regulations, 24 C.F.R. § 982.551(b)(2), requires Cox to supply any information the Authority requests during the recertification process. Therefore, the Authority could have reviewed and possibly challenged Cox's criminal record during Cox's 2014, 2015 and 2016 recertifications.

[9] In his brief to this Court, Cox states that he "continues to reside in the same residence as he did before his voucher was terminated. . . . The only difference is that he now has no voucher . . . ." Cox Br. at 24.

Based upon the evidence, on August 8, 2018, the trial court affirmed the Authority's decision to terminate Cox's Section 8 Program benefits and dismissed his appeal. The trial court made the following findings of fact (FOF):

1. [The Authority] presented credible evidence that Cox's abuse or pattern of abuse of alcohol may threaten the health, safety, or right to peaceful enjoyment of other residents.

2. [The Authority] exercised its discretion to permissibly terminate Cox's benefits pursuant to its [Administrative Plan] mandated by [HUD]. [N.T. Authority Ex. 3].

3. The [trial c]ourt did not find the testimony of Cox to be credible.

4. The issue of whether the incident at the [CamTran Station] was in the immediate vicinity of Cox's residence is not relevant to whether [the Authority] produced evidence of abuse or a pattern of abuse of alcohol by Cox that may threaten the health, safety or right to peaceful enjoyment of other residents.

Trial Ct. Op. at 2. The trial court concluded that "[the Authority] had the authority and discretion to terminate benefits in this case and the [trial c]ourt will not substitute its discretion [for] that of [the Authority]." Trial Ct. Op. at 3. On September 7, 2018, Cox appealed to this Court.[10]

Cox argues that the trial court erred and misapplied the law in affirming the Authority's decision to terminate his Section 8 Program assistance. He specifically contends that substantial evidence did not support the trial court's conclusion that Cox's behavior on September 2, 2017 at the CamTran Station

---

[10] "Our scope of review is limited to determining whether appellant's constitutional rights have been violated and whether the lower court manifestly abused its discretion or committed an error of law." *McLaughlin*, 616 A.2d at 1074 n.3. Where, as here, the trial court took additional evidence and made its own findings of fact, "[t]he trial court abuses its discretion if its findings are not supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *K. Hovnanian Pa. Acquisitions, LLC v. Newtown Twp. Bd. of Supervisors*, 954 A.2d 718, 722 n.1 (Pa. Cmwlth. 2008).

violated his HAP Contract, and the trial court's conclusion was overbroad since the incident did not occur at or near his leased premises, it did not impact other residents' health, safety or right to peaceful enjoyment of the premises, and he was properly vetted before receiving his Voucher.

The Authority rejoins that "[t]he only requirement for termination of benefits is that the pattern of alcohol abuse threatens the health, safety and right to peaceful enjoyment of the premises by other residents[,]" Authority Br. at 10, and that "HUD [R]egulations also allow [the Authority] to terminate Section 8 [Program] assistance if a family member has engaged in criminal activity, 24 C.F.R. [§] 982.553(c)[,]" which the Authority proved. Authority Br. at 10-11.

This Court has recognized:

> The relevant provisions of the Housing Act and its associated regulations, which apply throughout the country, provide particularized standards and criteria that all public housing authorities must consider and follow when reviewing an application for public housing. These criteria assure that housing authorities will use only those factors deemed permissible for consideration by the Housing Act and its associated regulations when reviewing applications for public housing and limit the discretion that a public housing authority may exercise in deciding whether to deny applications for public housing. Because a public housing authority's decision to grant or deny applications must be in accordance with the statutory and regulatory criteria, the public housing authority's discretion is certainly not 'unfettered' and, therefore, should not be 'unassailable.' *Caba* [*v. Weaknecht*], 64 A.3d [39,] 63 [(Pa. Cmwlth. 2013)].

*Bray v. McKeesport Hous. Auth.*, 114 A.3d 442, 453 (Pa. Cmwlth. 2015) (en banc).

The credible evidence presented to the trial court established that the Authority terminated Cox's Section 8 Program benefits because he was involved in a single alcohol-related crime that occurred approximately two miles from his residence on September 2, 2017, and because he had a record of prior criminal

7

charges. Based thereon, the trial court found that the Authority properly exercised its discretion to terminate Cox's assistance since Cox's purported "abuse or pattern of abuse of alcohol *may* threaten the health, safety, or right to peaceful enjoyment of other residents," and that the vicinity of the CamTran Station incident was not relevant. Trial Ct. Op. at 2, FOF 1 (italic emphasis added); *see also* FOFs 1, 4.

Section 8(d)(1)(B)(iii) of the Housing Act set forth the statutory criteria to which the Authority was bound, thereby mandating that HAP contracts include language specifying that

> during the term of the lease, any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants, **any criminal activity that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises**, or any drug-related criminal activity on or near such premises, engaged in by a tenant of any unit, any member of the tenant's household, or any guest or other person under the tenant's control, **shall be cause for termination of tenancy**[.]

42 U.S.C. § 1437f(d)(1)(B)(iii) (emphasis added). Section 8 of the Housing Act does not specify that alcohol abuse is a basis upon which a housing authority may terminate assistance.

However, pursuant to Section 982.552(c)(1) of the HUD Regulations the Authority "may at any time . . . terminate program assistance for a participant . . . [i]f the family violates any family obligations under the program . . . ." 24 C.F.R. § 982.552(c)(1). Family obligations are set forth in Section 982.551 of the HUD Regulations, which provides, in relevant part:

> (l) Crime by household members. The members of the household **may not engage in** drug-related criminal activity or violent criminal activity or other **criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the**

8

**immediate vicinity of the premises** (see [Section 982.553 of HUD Regulations, 24] § 982.553). . . .[11]

(m) Alcohol abuse by household members. The members of the household **must not abuse alcohol in a way that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises.**

24 C.F.R. § 982.551 (emphasis added).

Based upon the foregoing, the Real Estate Lease Agreement portion of Cox's HAP Contract prohibited him from committing acts that would injure persons in the building or on the property or which would disturb other residents or neighbors. *See* N.T. Authority Ex. 1 at 17. Cox's Voucher more specifically prohibited him from engaging in criminal activity and/or alcohol abuse "that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." N.T. Authority Ex. 2 at 2-3. Under his Tenancy Addendum to the HAP Contract, Cox agreed that the Authority may terminate his assistance "for any grounds authorized in accordance with HUD requirements[,]" N.T. Authority Ex. 1 at 22, which included criminal activity and/or alcohol abuse that "threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises."[12] 24 C.F.R. § 982.551.

---

[11] Section 982.553(c) of the HUD Regulations further states, in pertinent part:

The [Authority] may terminate assistance for criminal activity by a household member as authorized in this section if the [Authority] determines, based on a **preponderance of the evidence**, that the household member has engaged in the activity, **regardless of whether the household member has been arrested or convicted for such activity**.

24 C.F.R. § 982.553(c) (emphasis added).

[12] Section 8 of the Tenancy Addendum also authorized Cox's *landlord* to terminate his tenancy for "[c]riminal activity or alcohol abuse" "on or near the premises" or any criminal activity

Regardless of whether the only proven incidence of Cox's alcohol *use* presented to the trial court (the September 2, 2017 incident) rose to the level of "alcohol abuse," he was criminally charged for that incident. Accordingly, Cox participated in criminal activity.[13] However, based upon all of the language in Section 8 of the Housing Act, HUD Regulations, the HAP Contract, the Tenancy Addendum, the Voucher and the Administrative Plan, it is clear that **criminal activity and/or alcohol abuse alone is not a sufficient basis upon which to terminate Section 8 Program benefits**.

Congress did not state in Section 8 of the Housing Act that *any and all* criminal activity, wherever it occurs, is grounds to terminate Section 8 Program benefits. Neither did the HUD Regulations, the HAP Contract nor the documents that Cox signed place him on notice that *any and all* criminal activity and/or alcohol abuse no matter where it takes place constitute grounds upon which the Authority could end his benefits. Rather, based upon Section 8(d)(1)(B)(iii) of the Housing Act and applicable HUD Regulations, the Authority must prove, and the court must find that the tenant: (1) engaged in criminal activity (and/or alcohol abuse); and (2) such activity threatens the health, safety, or right to peaceful enjoyment of residents and/or persons in the immediate vicinity thereof. The second element demands proof of a threat to the health, safety or right to peaceful enjoyment of residents and/or persons

---

"that threatens the health or safety of or the right to peaceful enjoyment of the premises by residents . . . [or] persons residing in the immediate vicinity of the premises." N.T. Authority Ex. 1 at 21.

[13] Notably, the portions of the Administrative Plan admitted into evidence refer only to "violent criminal activity," which is defined as "any criminal activity that has as one of its elements the use, attempted use or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury or property damage." N.T. Authority Ex. 3 at 12-15. The record evidence is unclear as to whether criminal activity that is not violent is a basis on which the Authority would terminate Section 8 Program benefits. Notwithstanding, the HUD Regulations authorize the Authority to terminate assistance for criminal activity, whether violent or non-violent.

10

in the immediate vicinity on or near the Section 8 Program leased premises.[14]  Thus, **it is not the occurrence** of the criminal and/or alcohol-related act that is needed to jeopardize Cox's assistance **or the possibility that it could occur**, but **there *must also* be proof that the health, safety or peaceful enjoyment rights of those who reside in the "immediate vicinity" of Cox's premises was "threatened" by that act**.  24 C.F.R. § 982.551 (emphasis added).

The term "threatens" and the phrase "immediate vicinity" are not defined in Section 8 of the Housing Act, HUD Regulations, the HAP Contract, the Tenancy Addendum, the Voucher or the Administrative Plan.  Just as our state courts have held relative to state statutes,[15] the United States Supreme Court has ruled that where a federal statute does not define a term, the courts must "look first to the

---

[14] This interpretation comports with this Court's decision in *BCJ Management, L.P. v. Cotton* (Pa. Cmwlth. No. 1168 C.D. 2016, filed July 10, 2017), involving a Section 8 Program settlement agreement between the tenant and the landlord containing language nearly identical to that at issue in this case, except that "affects" was used in place of "threatens."  This Court ruled that *two proofs were necessary* to support a breach: "(1) abuse of alcohol; and, (2) such abuse affects [the] health, safety or right to peacefully enjoy the premises."  *Id.*, slip op. at 8.  Because the tenant's breach involved a physical confrontation in which the intoxicated tenant slapped another person on the public housing community premises where she lived, this Court held that she breached the settlement agreement.  *Cotton* is cited only for its persuasive value.  *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures (IOP), 210 Pa. Code § 69.414(a).

*See also* the District of Columbia Superior Court's holding in *D.C. Housing Authority v. Whitfield* (D.C. Super. No. 04-LT-401, filed August 11, 2004) (unreported), wherein the court interpreted language similar to that before this Court, to require *an additional showing* that the documented illegal act threatened the health and safety of other residents or disturbed the peaceful enjoyment of other residents.

[15] '[I]n statutory interpretation, our task is to discern the intent of the General Assembly, with the foremost indication being the statute's plain language.'  *Oliver v. City of Pittsburgh*, . . . 11 A.3d 960, 965 ([Pa.] 2011).  Where the intent of the legislature is clear from the plain meaning of the statute, courts must not pursue statutory construction.  1 Pa.C.S. § 1921(b); *Ramich v. Workers' Comp*[.] *Appeal B*[*d.*] *(Schatz Elec*[.]*, Inc.)*, . . . 770 A.2d 318, 322 ([Pa.] 2001).

*Twp. of Washington v. Twp. of Upper Burrell*, 184 A.3d 1083, 1088 (Pa. Cmwlth. 2018).

word's ordinary meaning."[16]  *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012); *see also Municipality of Mt. Lebanon v. Fillen*, 151 A.3d 722 (Pa. Cmwlth. 2016) (where statutory terms are not defined, the Commonwealth Court will look to common usage).  Further, to ascertain the common usage and meaning of a word in a statute, the courts may properly consider dictionary definitions.  *Mohamad*; *Municipality of Mt. Lebanon*.

According to Merriam-Webster's Collegiate Dictionary (11th ed. 2004) (Merriam-Webster), to "threaten" means "to hang over dangerously : menace" or "to cause to feel insecure or anxious[.]"  *Id.* at 1302.  Merriam-Webster defines "vicinity" as "a surrounding area or district : NEIGHBORHOOD[.]"  *Id.* at 1393.  "Immediate" is defined as "existing without intervening space or substance . . . : being near at hand[.]"  *Id.* at 620.  Moreover, in *Powell v. Housing Authority of the City of Pittsburgh*, 760 A.2d 473, 482 (Pa. Cmwlth. 2000) (*Powell I*) (en banc), *rev'd*, 812 A.2d 1201 (Pa. 2002), this Court affirmed the trial court's conclusion that a carjacking committed by the Section 8 Program participant's sons approximately 0.8 miles from the leased premises was not "in the immediate vicinity of the premises."[17]

---

[16] "[W]here a statute or regulation is based on federal statutes or regulations using the same language, it is appropriate to consider federal decisions and regulatory interpretations of the language at issue."  *Sedgwick Claims Mgmt. Servs., Inc. v. Bureau of Workers' Comp., Fee Review Hearing Office (Piszel & Bucks Cty. Pain Ctr.)*, 185 A.3d 429, 434 (Pa. Cmwlth. 2018); *see also Bray*.

[17] This Court acknowledges that, on appeal, the Pennsylvania Supreme Court reversed *Powell I* on other grounds (*Powell II*), stating that the trial court and this Court misread the HUD Regulations to conclude that the authority could only terminate Section 8 Program benefits for violent criminal activity if there was proof that it threatened the residents' or nearby persons' health, safety or peaceful enjoyment.  The *Powell II* Court concluded that an authority may terminate Section 8 Program benefits for violent crime without having to prove that the activity threatened residents' or nearby persons' health, safety or peaceful enjoyment.  Therefore, the *Powell II* Court did not reach or overturn the immediate vicinity question on mootness grounds.

Notwithstanding, in *BCJ Management, L.P. v. Russell* (Pa. Super. No. 957 WDA 2017, filed May 8, 2018), the Pennsylvania Superior Court deemed the holding in *Powell I* instructive and affirmed the trial court's order sustaining preliminary objections to an eviction complaint on the basis that the landlord could not prove that the tenant's criminal activity, 1.2 miles from the leased

Therefore, based upon the common usage of these terms, the Authority **failed to present one scintilla of evidence at the trial court hearing that Cox's September 2, 2017 incident made other residents of the premises where Cox lived at 200 Southmont Boulevard, Johnstown, or persons in the immediate vicinity of those premises, feel insecure or anxious for their health, safety or peaceful enjoyment**. The Authority had no statutory or regulatory basis on which to terminate Cox's benefits. The decision to terminate his benefits may not be based on mere speculation that the residents or persons in the immediate vicinity of those premises *could or may be* threatened at some point in the future.[18] Accordingly, this Court holds that since the trial court's decision was not based on substantial record evidence that Cox's September 2, 2017 incident, 1.9 miles from his residence, threatened other residents of the premises where Cox lived at 200 Southmont Boulevard, Johnstown, or persons in the immediate vicinity of those premises when it occurred, it abused its discretion by concluding otherwise.

Based on the foregoing, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

---

premises, threatened the health, safety or peaceful enjoyment of persons residing in the immediate vicinity thereof. "Although this Court is not bound by decisions of the Superior Court, they are persuasive precedent where they address analogous issues and do not conflict with any decisions or reasoning of this Court or our Supreme Court." *Kalmeyer v. Municipality of Penn Hills*, 197 A.3d 1275, 1280 (Pa. Cmwlth. 2018); *see also Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545 (Pa. Cmwlth. 2018). *Russell* is not inconsistent with this Court's or the Supreme Court's precedents, and we find it persuasive here.

[18] Because Cox was approved for the Section 8 Program *after* his prior arrests, this Court is not convinced that the Authority may now penalize him for them. Further, Section 12-II.D. of the Administrative Plan specifically states that "a record of arrest(s) will not be used as the basis for termination[.]" N.T. Authority Ex. 3 at 12-10. Even if the trial court properly considered Cox's past criminal history, there was no record evidence that those crimes occurred at or near Cox's Section 8 Program residence and/or threatened residents or persons in the immediate vicinity since Cox moved there in 2013.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arthur R. Cox, Jr.,                :
               Appellant      :
                                :
           v.                 :
                                :      No. 1329 C.D. 2018
Johnstown Housing Authority     :

### O R D E R

AND NOW, this 5th day of June, 2019, the Cambria County Common Pleas Court's August 8, 2018 order is reversed.

_____
ANNE E. COVEY, Judge