# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristan Hartman                               :
                                              :
            v.                                :    No. 164 C.D. 2021
                                              :    SUBMITTED:  October 10, 2023
Housing Authority of the County of            :
Lawrence,                                     :
                          Appellant           :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                   **FILED:  November 2, 2023**


Appellant, the Housing Authority of the County of Lawrence, appeals from the order of the Court of Common Pleas of Lawrence County sustaining the statutory appeal of Kristan Hartman, Applicant, from the Authority's decision denying her application for assistance under the Housing Choice Voucher Program, commonly known as "Section 8."[1]  The trial court remanded the matter to the Authority to reconsider her application,[2] directing that the Authority was prohibited

---

[1] Section 8(a) of the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f(a).

[2] We note that under Pennsylvania Rule of Appellate Procedure 311(f)(2), "[a]n appeal may be taken as of right from . . . an order of a common pleas court . . . remanding a matter to an administrative agency . . . that decides an issue that would ultimately evade appellate review if an immediate appeal is not allowed."  Pa.R.A.P. 311(f)(2)

from considering a previous criminal charge in determining her eligibility for Section 8 housing. We affirm.

The trial court found as follows. In September 2018, Applicant applied for Section 8 benefits from the Authority, which administers Lawrence County's Section 8 program under United States Department of Housing and Urban Development (HUD) regulations. Applicant was placed on a waiting list. After informing the Authority of her continued interest in the program, on July 31, 2020, Applicant was notified that she had been declared "inactivated" and removed from consideration for Section 8 benefits. Applicant requested to be reactivated and the Authority's Section 8 coordinator advised that her inactivation was due to a background check showing "welfare fraud" and that reactivation would be denied until she had paid back all restitution in her criminal case. Applicant requested an informal hearing with the Authority, which request was granted; no record was made of this proceeding. Subsequently, the Authority issued a formal denial letter, again citing Applicant's criminal charge and an outstanding restitution balance. The Authority again informed Applicant that if she paid off her remaining restitution, she could reapply for Section 8 benefits.

The criminal charge in question—the basis of the Authority's decision—was one count of fraudulently obtaining food stamps or other public assistance in violation of Section 481 of the Human Services Code,[3] a felony of the third degree. Applicant applied for admission to the Accelerated Rehabilitative Disposition (ARD) program in August 2016, which was granted by the trial court in October 2016. Applicant's acceptance into ARD came with conditions, including a term of probation and payment of $7,118 in restitution to the Pennsylvania

---

[3] Section 481 of Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 481.

2

Department of Human Services. Two years later, on September 21, 2018, her ARD admission was revoked but immediately reinstated by the trial court. As of early 2021, Applicant owed over $5,000. Although the trial court noted the Authority's contention that Applicant will continue to be in ARD "for some time" because she is paying restitution at the rate of $30 per month (Trial Ct. Op. at 4), we take judicial notice of the criminal docket in her case which indicates that while she continues to make restitution payments, she completed ARD as of October 30, 2018 [Docket Entries, *Com. v. Hartman* (C.C.P. Lawrence, Docket No. CP-37-CR-0000684-2016, printed December 9, 2020), Reproduced R. (R.R.) at 26a].

Applicant filed a statutory appeal in the trial court, as permitted by Section 752 of the Local Agency Law, 2 Pa.C.S. § 752, to which the Authority responded with an answer and new matter and, eventually, a motion for judgment on the pleadings. A hearing was conducted on the matter on January 13, 2021, during which counsel made arguments but presented no testimony or other evidence. Thus, the record before the trial court consisted of the pleadings and attached documents.

The trial court issued an opinion and order on February 3, 2021. It determined that the case "boils down to . . . whether the [Authority] was permitted to use [Applicant's] 2016 criminal case as a basis for denying her request for Section 8 benefits." (Trial Ct. Op. at 4.) The trial court noted that the matter was governed by HUD regulation found at 24 C.F.R. § 982.553. The trial court explained that under HUD regulation, which is incorporated nearly verbatim into the Authority's administrative plan for its Section 8 program, there are criminal activities which result in mandatory or permissive denial of admission to the program. Of those activities, the Authority argued that it appropriately exercised its discretion to deny

Applicant's application due to her criminal record under the following regulatory provisions:

> (A) The [Public Housing Authority (PHA)] may prohibit admission of a household to the program if the PHA determines that any household member is currently engaged in, or has engaged in during a reasonable time before the admission:
>
> . . . .
>
> (3) Other criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity; or
>
> (4) Other criminal activity which may threaten the health or safety of the owner, property management staff, or persons performing a contract administration function or responsibility on behalf of the PHA (including a PHA employee or a PHA contractor, subcontractor or agent).

24 C.F.R. § 982.553(a)(2)(ii)(A)(3)-(4). The trial court noted that the Authority's administrative plan considers mitigating circumstances, such as the nature of the crime(s), how much time has elapsed since the offense(s), whether the crime(s) ended with or without a conviction, and the connection of the applicant to the crime(s). (Trial Ct. Op. at 5.) The trial court concluded that the Authority had acted in error and abused its discretion because there was no evidence that Applicant's unproven welfare fraud charge threatened the health, safety, and right to peaceful enjoyment of her prospective neighbors or Authority personnel and that there was no showing of a nexus between her charge and such threat. The trial court, as stated at the outset, sustained Applicant's appeal and ordered that upon remand to the

4

Authority for reconsideration of her application, the Authority was prohibited from considering the welfare fraud charge.

The Authority filed the instant appeal and the trial court issued an order for the filing of a concise statement of matters complained of on appeal, with which the Authority complied. The trial court rejected the Authority's arguments in an opinion issued under Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a). The instant appeal ensued.

On appeal, the Authority raises the following issues:

1. Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion in sustaining [Applicant's] statutory appeal, because the . . . Authority was permitted to deny her admission to the Section 8 [p]rogram pursuant to federal regulations and . . . Authority [p]olicy . . . .

2. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in failing to establish an evidentiary record and sustaining [Applicant's] appeal.

(Authority Br. at 3.)

The Authority first argues that it was permitted to deny Applicant admission to the Section 8 program pursuant to federal regulation and Authority policy. The Authority cites the HUD regulation's permissive prohibitions as authority, pointing out that "a household member is 'currently engaged in' criminal activity if the person has engaged in the behavior recently enough to justify a reasonable belief that the behavior is current." 24 C.F.R. § 982.553(a)(2)(C)(2). The Authority notes that the regulations permit termination of assistance for criminal activity by a household member "regardless of whether the household member has been arrested or convicted for such activity." 24 C.F.R. § 982.553(c). The Authority

5

insists that Applicant's felony charge "provided sufficient grounds for the Authority to deny her admission to the Section 8 [p]rogram, as the applicable regulations do not require a conviction, and as a result [Applicant's] entry into the ARD program is irrelevant."[4]  (Auth. Br. at 12.)

As we stated in *Bray v. McKeesport Housing Authority*, 114 A.2d 442, 453 (Pa. Cmwlth. 2015), "[b]ecause a public housing authority's decision to grant or deny applications must be in accordance with the statutory and regulatory criteria, the public housing authority's discretion is certainly not 'unfettered' and, therefore, should not be 'unassailable.'"  *Id.* [quoting *Caba v. Weaknecht*, 64 A.3d 39, 63 (Pa. Cmwlth. 2013)].  We have further held that under HUD regulations (and the plans of agencies incorporating those standards) as they apply in similar terms to family members of a household in Section 8 housing,[5] it is not criminal activity alone that forms a sufficient basis to terminate Section 8 benefits.  Rather, an authority "must prove, and the court must find that the tenant: (1) engaged in criminal activity (and/or

---

[4] Within its first argument, the Authority complains that it was denied the opportunity to develop a factual record.  We deal with the substance of this portion of the argument in our discussion of the Authority's second issue, wherein this argument is also made.

[5] Pursuant to Section 982.552(c)(1) of the HUD regulations, the Authority "may at any time . . . terminate program assistance for a participant . . . [i]f the family violates any family obligations under the program . . . ."  24 C.F.R. § 982.552(c)(1).  Family obligations are set forth in Section 982.551(*l*) of the HUD regulations, which provides, in relevant part:

> Crime by household members. The members of the household *may not engage in* drug-related criminal activity or violent criminal activity or other *criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises* (*see* [24 C.F.R.] § 982.553) . . . .

24 C.F.R. § 982.551(*l*) (emphasis added).

alcohol abuse); and (2) such activity threatens the health, safety, or right to peaceful enjoyment of residents and/or persons in the immediate vicinity thereof."[6] *Cox v. Johnstown Housing Auth.*, 212 A.3d 572, 579 (Pa. Cmwlth. 2019). "The second element demands proof of a threat to the health, safety or right to peaceful enjoyment of residents and/or persons in the immediate vicinity on or near the Section 8 [p]rogram leased premises." *Id.* Thus, where a Section 8 participant was found guilty of public drunkenness 1.9 miles from his apartment,

> [I]t is not the occurrence of the criminal . . . act that is needed to jeopardize [a resident's] assistance or the possibility that it could occur, but there *must also* be proof that the health, safety or peaceful enjoyment rights of those who reside in the 'immediate vicinity' of [a resident's] premises was 'threatened' by that act.

*Id.* at 579-80 (emphasis in original) [quoting 24 C.F.R. § 982.551]. In *Cox*, we found no statutory or regulatory basis to terminate Section 8 benefits where an authority "failed to present one scintilla of evidence at the trial court hearing that [the criminal] incident made other residents of the premises where Cox lived . . ., or persons in the immediate vicinity of those premises, feel insecure or anxious for their health, safety or peaceful enjoyment." *Id.* at 581 (emphasis removed).

In this case, no evidence was presented by the Authority showing that in the years 2020 and 2021, the bald fact of a 2016 charge of welfare fraud, for which Applicant participated and completed ARD and continues to pay restitution to the

---

[6] The trial court termed this an adoption of a "nexus" standard found in the other states' appellate decisions it relied upon, most significantly in *Kolio v. Hawai'i Public Housing Authority*, 349 P.2d 374 (Haw. 2015), wherein the Hawai'i high court required a showing of a "nexus between the tenant's criminal activity and the threat to health, safety, and enjoyment of the premises by other residents or management employees." *Id.* at 379. While we did not specifically refer in *Cox* to a required "nexus," we view this as immaterial, as the evidentiary requirement set forth is essentially the same.

Commonwealth, represented a threat to the "health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity" or threatened the "the health or safety of the owner, property management staff, or persons performing a contract administration function or responsibility on behalf of the [Authority] (including a[n] [Authority] employee or a[n] [Authority] contractor, subcontractor or agent)." *See* 24 C.F.R. § 982.553(a)(2)(ii)(A)(3)-(4). Thus, it cannot be said that the trial court erred in finding no such relationship on the record presented.[7]

With regard to the second issue presented, that the trial court erred in failing to establish an evidentiary record, we note that the procedural posture the Authority chose dictated this result: namely, the Authority's filing of a motion for judgment on the pleadings. While the trial court correctly noted that the Pennsylvania Rules of Civil Procedure do not apply in statutory appeals under the Local Agency Law, our Supreme Court has clearly established that in the absence of a specific rule, trial courts are "empowered to regulate practice and procedure before them when a void exists" so long as the practice is not in "violat[ion of] the Constitution or laws of the Commonwealth or United States, or [the Supreme Court's] state-wide rules." *Appeal of Borough of Churchill*, 575 A.2d 550, 554 (Pa. 1990). Here, the trial court considered the Authority's motion for judgment on the pleadings as akin to one filed in a typical civil action governed by the Pennsylvania Rules of Civil Procedure. Pennsylvania Rule of Civil Procedure 1034(a) provides that "[a]fter the relevant pleadings are closed, but within such time as not to

---

[7] The Authority further asserts that Applicant's charge for welfare fraud in 2016 and the continued obligation for restitution "provide a potential opportunity for her to defraud another government program" (Auth. Br. at 19), and that she might "take the position of a law-abiding citizen in need as well" (*id.*), and thus that it was within its rights to deny assistance. These considerations have no bearing under the HUD regulatory scheme.

8

unreasonably delay the trial, any party may move for judgment on the pleadings." Pa. R.Civ.P. 1034(a). "The court shall enter such judgment or order as shall be proper on the pleadings." Pa. R.Civ.P. 1034(b). It has been clearly explained by our Supreme Court that a court presented with a motion for judgment on the pleadings may enter judgment for the non-moving party:

> If, under Rule 1034, a court holds that a cause of action is absolutely barred it does not matter that the court enter judgment in favor of the non-moving party because there is simply no such action and the matter ends. "It would be irrational to deny judgment on the pleadings to a party rightly entitled thereto simply because he happened not to be the party who made the motion."

*Bensalem Twp. Sch. Dist. v. Com.*, 544 A.2d 1318, 1321 (Pa. 1988) (footnote omitted) [quoting *Boron v. Smith*, 110 A.2d 169, 171 (Pa. 1955)]. In *Bensalem Township School District*,[8] the Supreme Court noted a converse rule as well:

> Similarly, where a defendant has filed for judgment on the pleadings admitting liability but asserting an avoidance defense, e.g. statutory immunity, the failure of the moving defendant necessarily means that the plaintiff's action succeeds. Thus, it would serve no purpose for the presiding judge to refuse to enter the appropriate judgment until the plaintiff then files a *pro forma* motion.

*Id.* at n.3.

In this case, the burden of showing a threat posed by Applicant's activity lay with the Authority. *Cox*. In her appeal under the Local Agency Law, Applicant averred that her application for Section 8 housing had been rejected, that

---

[8] In *Bensalem Township School District*, the Supreme Court discussed Rule 1034 as it contrasted with the Pennsylvania Rule of Civil Procedure Rule 1035, Pa. R.Civ.P. pertaining to motions for summary judgment, which do not permit judgment for the non-moving party.

she had appealed, that an informal hearing had been held, and that the Authority had upheld its original decision. All referenced documents were appended. The only denials of averments by the Authority were to averments concerning exhaustion of administrative remedies (Auth. Answer and New Matter ¶ 9, R.R. at 14a) and that Applicant was an aggrieved party and eligible for Section 8 housing (*id.* ¶¶ 10-11). The New Matter contained averments concerning HUD regulations and the Authority's policy document and the fact of Applicant's charge and outstanding restitution balance. The motion for judgment on the pleadings contains no explanation of how the bald fact of the welfare fraud charge and outstanding restitution might present the type of threat envisioned by HUD regulations. (Mot. for J. on Pleadings, R.R. at 36a-40a). At the hearing held by the trial court, there was no intimation of further evidence against Applicant. The Authority cannot now be heard to complain that it was not afforded an opportunity to make an evidentiary record when it insisted that the facts in the pleadings were sufficient to decide the case.

In light of the foregoing, the order of the trial court is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kristan Hartman                 :
                                   :
          v.              :   No. 164 C.D. 2021
                                   :
Housing Authority of the County of  :
Lawrence,                     :
              Appellant   :

## O R D E R

AND NOW, this 2nd day of November, 2023, the order of the Court of Common Pleas of Lawrence County is AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita