IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arnetta Jackson-Johnson,     :
      Appellant   :
           :
    v.      :
           : No. 1476 C.D. 2024
Wilkes-Barre Housing Authority : Submitted: April 13, 2026


BEFORE:  HONORABLE ANNE E. COVEY, Judge
      HONORABLE LORI A. DUMAS, Judge
      HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY         FILED: June 10, 2026


    Arnetta Jackson-Johnson (Appellant) appeals from the Luzerne County (County) Common Pleas Court's (trial court) October 10, 2024 order granting the Wilkes-Barre Housing Authority's (Authority) Motion to Dismiss Appellant's Petition for Appeal (Motion to Dismiss) from the Authority's decision (Decision) that terminated her Housing Choice Voucher Program (Program)[1] voucher. Essentially, Appellant presents one issue for this Court's review: whether the trial court erred by granting the Motion to Dismiss.[2] After review, this Court affirms.

---

[1] *See* Section 1437f of the United States (U.S.) Code, 42 U.S.C. § 1437f (relating to low-income housing assistance). "The Program is more commonly known as the Section 8 Program, which provides housing assistance to low-income individuals and families." *MaCool v. Berks Cnty. Hous. Auth.* (Pa. Cmwlth. No. 1384 C.D. 2017, filed July 30, 2018), slip op. at 1. This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *MaCool* is cited herein for its persuasive value.

[2] Appellant raises two additional issues in her brief to this Court: (1) whether the trial court erred by applying the Pennsylvania Rules of Civil Procedure (Civil Rules) to Appellant's local agency appeal; and (2) whether the trial court erred by applying the County Rules of Civil

Appellant resides in an apartment located at 273 New Hancock Street, Unit 3, Wilkes-Barre, Luzerne County, Pennsylvania, which is part of the Program that the Authority administers.[3]  On August 13, 2024, the Authority sent Appellant a notice terminating her Program voucher (Termination Letter) effective September 13, 2024.  The Termination Letter stated:

> The [Program v]oucher you signed states:
>
> > Obligations of the Family
> >
> > > C: Any information the family supplies must be true and complete[.]
> > >
> > > D: The family (including each family member) must not:
> > >
> > > > 3: Commit fraud, bribery, or any other corrupt act in connection with the [P]rogram[.]
>
> You were given a [Program] voucher to move to a new unit on March 19, 2024.  On June 13, 2024[,] a Request for Tenancy form was submitted to this office signed by yourself and the prospective landlord, which ultimately le[]d to a contract being executed and a new lease beginning July 1, 2024.  The . . . Authority paid the initial month amount of $784[.00] to the landlord as agreed.  You failed to come to [this] office to sign your portion of the documents despite multiple attempts to reach you by phone.
>
> On June 24, 2024, your bail was revoked, and you were placed in the Luzerne County Correctional Facility, where

Procedure (Local Rules) to the Appellant's local agency appeal.  However, in the trial court's opinion in support of its October 10, 2024 order, the trial court explained that Appellant's noncompliance with the Civil Rules and Local Rules "**w[as] cured** on the date of the hearing" and, thus, did not form the basis for the trial court's decision.  Trial Ct. Op. at 4 (emphasis added).  Accordingly, this Court does not address Appellant's additional arguments.

[3] "The Program is under the purview of the U.S. Department of Housing and Urban Development (HUD), but generally administered by local housing authorities — here, the [] Authority.  [*See* Section 982.1(a) of the HUD Regulations,] 24 C.F.R. § 982.1(a)." *MaCool*, slip op. at 1.

you remain to this date. You never revealed this to [this] office despite knowing this office was in the process of executing a lease on your behalf.

Several actions were taken by you and your daughter, Bianca, to purposely deceive this office and conceal the fact you were in jail and proceed with [the] lease process. These actions include but [sic] not limited to:

> • [S]everal phone messages left by you stating you were in Florida recovering from a broken hip.

> • Your daughter stated you were in a hospital in Danville.

> • Your daughter lying when directly asked if you were in jail[.]

> • A Power of Attorney notarized statement presented to this office by Bianca, along with her state [identification] and an undated letter from a home healthcare agency stating you have two care workers for a variety of service needs, implying you were incapable of coming to the office or signing papers because of physical/medical issues.

> • You changed your phone number of record with us without disclosing it was Bianca's[.]

Obviously, [this office] would not have proceeded with the lease process had you disclosed your situation accurately. [This office] would not have allowed your daughter to sign documents for you, nor would [this office] have made any payments to the landlord for this lease. Given your lengthy criminal history, the charges you are currently facing, and the revocation of bail, [this office] would more than likely have put this [Program] voucher on hold until these matters were settled before taking any further action.

It is for these reasons that the contract for your current unit has been cancelled effective immediately and you are being terminated from the [P]rogram effective September 13, 2024.

Notice of Appeal, Ex. A.[4]

---

[4] Appellant did not file a Reproduced Record.

3

Appellant timely requested a hearing to challenge the Termination Letter. On August 29, 2024, an Authority hearing officer held a hearing which Appellant and Steven Schneidner (the Authority's Program Coordinator) attended. Following the hearing, the Authority hearing officer issued the Decision, wherein the hearing officer stated, in relevant part:

> After carefully reviewing the information presented in this hearing and statements made by both parties[,] [this hearing officer has] ruled that you were in violation of Obligations of the [F]amily[.]
>
> > C- Any information the family supplies must be true and complete[.]
> >
> > D- The family (including each family member) must not:
> >
> > > 3. Commit fraud, bribery, or any corrupt act in connection with the [P]rogram[.]
>
> Therefore, the cancellation of your [Program voucher] will be effective September 13, 2024.

Notice of Appeal, Ex. B.

On September 26, 2024, Appellant filed a Petition for Appeal (Petition) in the trial court. Therein, Appellant averred, in pertinent part:

> 5. From June 21, 2024 until August 28, 2024, [Appellant] was incarcerated for shoplifting.
>
> 6. [Appellant] did not inform the . . . Authority that she was incarcerated.
>
> 7. Instead of informing the . . . Authority of her incarceration for shoplifting, [Appellant] claimed to be in Florida recovering from a broken hip.
>
> 8. [Appellant] and allegedly Bianca, [Appellant's] daughter, attempted to mislead the . . . Authority to conceal [Appellant's] incarceration for shop[]lifting.

9. [Appellant] was terrified of the possibility that her incarceration could lead to the loss of her [Program] voucher, because she needs the [Program] voucher to maintain stable housing.

. . . .

11. On July 1, 2024[,] the lease for [Appellant's] new residence began; that same day the [Program v]oucher contract between the . . . Authority, [Appellant], and her landlord began.

12. The . . . Authority paid the initial month's [Program] voucher of $784.00 to the landlord.

Notice of Appeal, Ex. C, Petition at 1-2.

On October 2, 2024, the Authority filed the Motion to Dismiss, therein averring that the Petition: (1) did not include a supporting brief as required under the County's Rules of Civil Procedure; (2) was not properly verified in accordance with Pennsylvania Rule of Civil Procedure 1024; and (3) failed to state a valid legal claim upon which relief may be granted, i.e., given Appellant's admissions therein, the Authority properly canceled her Program voucher. The trial court conducted a hearing on October 2, 2024. On October 10, 2024, the trial court granted the Motion to Dismiss due to the Petition's failure to state a claim upon which relief may be granted. Appellant appealed to this Court.[5]

Thereafter, Appellant filed an Application for Injunction Pending Appeal (Injunction Application) in the trial court. Following an evidentiary hearing and after reviewing the parties' post-hearing briefs, the trial court denied the

---

[5] "[This Court's] review is limited to determining whether appellant's constitutional rights have been violated and whether the lower court manifestly abused its discretion or committed an error of law." *McLaughlin*[ *v. Centre Cnty. Hous. Auth.*], 616 A.2d [1073,] 1074 n.3 [(Pa. Cmwlth. 1992)].

*Cox v. Johnstown Hous. Auth.*, 212 A.3d 572, 577 n.10 (Pa. Cmwlth. 2019).

Injunction Application. On November 27, 2024, Appellant filed an Application to Renew Application for Injunction Pending Appeal (Renewal Application) in this Court. On March 14, 2025, this Court denied the Renewal Application without prejudice.

> Initially,
>
> [i]n administering the Program, [a h]ousing [a]uthority must comply with all [United States] Department of Housing and Urban Development [(]HUD[)] [R]egulations and requirements. 24 C.F.R. § 982.52(a). The [h]ousing [a]uthority is required to adopt a written Administrative Plan that establishes local policies for administration of the Program in accordance with HUD requirements. [*See* Section 982.54 of the HUD Regulations,] 24 C.F.R. § 982.54.
>
> Tenants participating in the Program must be annually recertified, which requires them to provide information to the [h]ousing [a]uthority on recertification forms to ensure their compliance with the Program rules and regulations. [*See* Section 982.516 of the HUD Regulations,] 24 C.F.R. § 982.516. **A tenant's participation in the Program may be terminated for violating any family obligations** [(Family Obligations)] **set forth in the HUD [R]egulations or the [h]ousing [a]uthority's [a]dministrative [p]lan**. [*See* Section 982.552(c)(1)(i) of the HUD Regulations,] 24 C.F.R. § 982.552(c)(1)(i).

*MaCool v. Berks Cnty. Hous. Auth*. (Pa. Cmwlth. No. 1384 C.D. 2017, filed July 30, 2018), slip op. at 1-2 (emphasis added).

Appellant asserts that the trial court erred by granting the Authority's Motion to Dismiss. Specifically, Appellant argues that "the [T]ermination [L]etter's explanations focused on fraud and criminal activity" despite that her "misrepresentations did not rise to the level of fraud, and her criminal activity did not . . . qualify under any mandatory or a permissive type of termination." Appellant's Br. at 11. Essentially, Appellant claims that her conduct that mislead

6

the Authority did not meet the HUD Regulation's definition of *fraud* and that her criminal activity is not the type referenced in the HUD Regulations permitting or requiring expulsion from the Program.[6]

Importantly, the Termination Letter supplied two justifications for termination, both of which related to *Family Obligations*: (1) responsibility to provide true and complete information; and (2) prohibition against "fraud, bribery, or any other corrupt act in connection with the [P]rogram." Notice of Appeal, Ex. A.

Section 982.551 of the HUD Regulations establishes Family Obligations and states, in relevant part:

> (a) Purpose. This section states the obligations of a participant family under the [P]rogram.
>
> (b) Supplying required information. —
>
>> (1) The family must supply any information that the [Authority] or HUD determines is necessary in the administration of the [P]rogram . . . .
>>
>> . . . .
>>
>> **(4) Any information supplied by the family must be true and complete.**
>>
>> . . . .
>
> (h) Use and occupancy of unit. —
>
>> (1) The family must use the assisted unit for residence by the family. . . .
>>
>> . . . .

---

[6] Section 792.103 of the HUD Regulations defines fraud and abuse as: "a single act or pattern of actions: (1) [t]hat constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead; and (2) [t]hat results in payment of . . . [P]rogram funds in violation of . . . [P]rogram requirements." 24 C.F.R. § 792.103.

(i) Absence from unit. The family must supply any information or certification requested by the [Authority] to verify that the family is living in the unit, or relating to family absence from the unit. . . . **The family must promptly notify the [Authority] of absence from the unit**.

. . . .

(k) Fraud and other program violation. The members of the family must not commit fraud, bribery[,] or any other corrupt or criminal act in connection with the [P]rogram[].

24 C.F.R. § 982.551 (emphasis added).

Section 982.552(c) of the HUD Regulations sets forth the circumstances under which the Authority may deny assistance, including, in pertinent part:

Authority to deny admission or terminate assistance.

(1) Grounds for denial or termination of assistance. **The [Authority] may <u>at any time</u> deny [P]rogram assistance for an applicant, or terminate [P]rogram assistance for a participant, for any of the following grounds**:

(i) **If the family violates any [F]amily [O]bligations under the [P]rogram** (*see* [**24 C.F.R.**] § **982.551**). *See* [Section] 982.553 [of the HUD Regulations, 24 C.F.R. § 982.553 (]concerning denial or termination of assistance for crime by family members[)].

. . . .

(iv) If any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any [f]ederal housing program (*see also* [24 C.F.R. §] 982.553(a)(1))[.]

24 C.F.R. § 982.552(c) (bold, italic and underline emphasis added).

In *MaCool*, the tenant therein had completed her housing authority recertification forms in 2016 and 2017, and checked the box indicating that neither

she nor any household member had been arrested or convicted of a crime, other than a traffic violation, within the previous 12 months. However, during a background check, the housing authority discovered that the tenant had been arrested twice in 2016, and had pled guilty in 2017 to charges arising from a 2015 arrest. Despite the tenant's claim that she had reported the arrests to her case worker, the housing authority removed her from the Program for violating the Family Obligations. The trial court granted the tenant's appeal because it believed the tenant did not intend to violate the Program's rules and regulations.

On appeal, this Court reversed the trial court's decision, explaining:

Section 982.551(b)(4) [of the HUD Regulations] plainly provides that "[a]ny information supplied by the family must be true and complete." 24 C.F.R. § 982.551(b)(4). Section 982.552(c)(1)(i) [of the HUD Regulations] further provides that the [h]ousing [a]uthority may terminate assistance "[i]f the family violates **any** [F]amily [O]bligations under the [P]rogram (*see* [24 C.F.R.] § 982.551)." 24 C.F.R. § 982.552(c)(1)(i) (emphasis added).

A review of the regulatory history of these pertinent HUD [R]egulations further supports the conclusion that [they] do not require proof of intent.

On July 3, 1995, HUD published a proposed rule that revised and renumbered several [R]egulations governing the Program, including Sections 982.551 (proposed statement of [F]amily [O]bligations) and 982.552 (the ability of a housing authority to terminate assistance for violation of [F]amily [O]bligations). *See* Certificate and Voucher Programs Conforming Rule, 60 Fed. Reg. 34, 684 (July 3, 1995). In its publication, HUD addressed comments that it had received in response to the proposed rule. Th[o]se comments suggested that a violation of [F]amily [O]bligations might be unintentional, minor, or beyond the family's control[,] and recommended that a housing authority should only terminate housing assistance because of serious or repeated violations of the

9

[F]amily [O]bligations. *Id*. However, HUD expressly declined to adopt the recommendation, stating that[]

> [a]ll [F]amily [O]bligations are important. The family is responsible for compliance with all [F]amily [O]bligations, **and the [housing authority] may terminate assistance for any violation**. To terminate assistance, the [housing authority] must show that the family has committed the violation charged. In general, the [housing authority] should not be required to show also that the violation of [F]amily [O]bligations is "serious or repeated[."] To add this requirement would complicate and discourage the enforcement of [P]rogram requirements. . . . **If the family has violated a [P]rogram obligation**, the [housing authority] **has discretion to terminate assistance on the facts of the particular case**.

*Id*. ([bold] emphasis added).

This response by HUD reveals that <u>while a housing authority has discretion in deciding when to terminate a tenant from the Program, "the [housing authority] may terminate assistance for any violation" [of the Family Obligations] as long as the housing authority shows that "the family has committed the violation charged</u>."

*MaCool*, slip op. at 8-9 (footnotes omitted; underline emphasis added).

Adopting the *MaCool* Court's reasoning here, this Court similarly concludes that the Authority was not required to prove fraud or that Appellant's criminal history involved the types of crimes enumerated in the HUD Regulations. Rather, the Authority merely had to show that Appellant violated the Family Obligations. Here, Appellant's admissions in the Petition that her representations to the Authority about her absence were not "true and complete[,]" 24 C.F.R. §

982.551(b)(4), provided the necessary evidence to satisfy the Authority's burden. Accordingly, the trial court did not err by granting the Motion to Dismiss.[7]

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

---

[7] Appellant also contends that she was not absent for a prohibited time period because "[u]nder [Section 982.312(a) of the HUD Regulations,] 24 C.F.R. § 982.312[(a),] Absence from Unit, a . . . [P]rogram voucher recipient is permitted to be absent for a short amount of time, up to 180 consecutive calendar days." Appellant's Br. at 14. However, the Authority did not purport to terminate Appellant's Program voucher for her absence. Instead, the Authority's termination was based on Appellant's admitted dishonesty and her failure to promptly notify the Authority of her incarceration and resulting absence as required by Section 982.551(h)(1) of the HUD Regulations. *See* Notice of Appeal, Ex. C, Petition at 1-2.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arnetta Jackson-Johnson, :
                Appellant :
                 :
        v. :
                 : No. 1476 C.D. 2024
Wilkes-Barre Housing Authority :

## O R D E R

AND NOW, this 10th day of June, 2026, the Luzerne County Common Pleas Court's October 10, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge